UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re
Jodi L. Johnson,
       Debtor.

Chapter 13
Case No. 10-32528-svk

**MEMORANDUM DECISION ON
TRUSTEE'S OBJECTION TO CONFIRMATION**

The issue in this Chapter 13 case is whether the Debtor may pay her student loans in full while paying less than 100% to her other unsecured creditors, either by deducting the student loan obligation as a "special circumstance" when calculating her disposable income, or by classifying her student loan separately from other unsecured debts. Because the Debtor's pursuit of further education was not necessitated by an involuntary or unexpected event, and the Debtor is not without a "reasonable alternative" to the deduction, her student loans do not qualify for "special circumstance" treatment. However, since the student loan obligations are long-term debts that will extend beyond the term of the plan, the Debtor can separately classify and pay the student loans in full without unfairly discriminating against her other unsecured creditors.

## I. FACTS

Jodi L. Johnson (the "Debtor") filed a Chapter 13 petition on July 29, 2010. The Debtor's plan provides for monthly payments of $645 for five years, with general unsecured creditors scheduled to receive a distribution of $8,700 over the life of the plan. The Trustee has objected to confirmation of the plan on the grounds that the plan fails to allocate all of the Debtor's disposable income toward the repayment of unsecured creditors—specifically, the Trustee takes issue with the Debtor's deduction of $641 per month for her student loans as a "special circumstance" on Form B22C. *See* 11 U.S.C. § 1325(b)(1)(B).

1

According to an Affidavit filed by the Debtor, she incurred her student loans in the pursuit of a law degree in Michigan from 2004 to 2007. Previously the Debtor lived in Utah and worked for several years as a registered nurse. The Debtor's justification for the shift in career paths from nursing to the legal profession is twofold. First, the Debtor believed that she had already realized her maximum earning potential as a registered nurse and hoped for a more lucrative career as a lawyer. Second, a prolonged battle with weight issues convinced the Debtor that she would eventually be unable to sustain her career as a nurse, thus necessitating a change to a less physically demanding profession.

After completing her legal education in 2007, the Debtor returned to Utah, where she worked as an attorney for a year. In 2009, the Debtor relocated to Wisconsin to be closer to her elderly and ill parents, and is currently employed as a nurse while she prepares for the Wisconsin bar examination. She is living with her sister, and her household expenses are very modest.

The Debtor's student loans in this case comprise $98,660.72 of the Debtor's $149,093.59 in total unsecured debts. The proposed Chapter 13 plan allocates 22.48% of all plan payments to unsecured creditors. If the Debtor combines her student loan payment with the proposed payment to unsecured creditors and pays everyone pro rata as the Trustee suggests, the balance on the Debtor's student loan obligations would actually increase at the end of the five-year plan. On the other hand, if the Debtor can maintain her current student loan payment, either by separately classifying the student loans from the other unsecured creditors or by deducting the student loan payments as a special circumstance, the result will be a reasonable reduction in the Debtor's student loan balance at the end of the plan.

## II. ANALYSIS

**A. The Debtor's obligations on the student loans are not special circumstances.**

Title 11 U.S.C. § 707(b)(2)(B) incorporates into the means test a deduction for special circumstances, "such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that [*sic*] justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." The two examples listed in the statute are illustrative but not exclusive; situations such as "lost jobs, domestic relations problems, children in trouble, natural disasters, [and] car wrecks" could also constitute "special circumstances." *See* Keith M. Lundin, *Chapter 13 Bankruptcy, 3d Edition* § 478.1 (2000 & Supp. 2007). For debtors with income above the state median, Bankruptcy Code § 1325(a)(3) incorporates the Chapter 7 means test into the disposable income test for Chapter 13. In *In re Crego*, 387 B.R. 225 (Bankr. E.D. Wis. 2008), this Court determined that the analysis of special circumstances in the Chapter 13 context parallels the line of reasoning employed in Chapter 7 cases.

The issue of whether a student loan constitutes special circumstances has produced an inconsistent body of case law. *Compare In re Carrillo*, 421 B.R. 540 (Bankr. D. Ariz. 2009) (ordinary course student loans where Chapter 13 is an option not special circumstances); *and In re Vaccariello*, 375 B.R. 809 (Bankr. N.D. Ohio 2007) (mere nondischargeable nature of student loans does not constitute special circumstances); *with In re Delbecq*, 368 B.R. 754 (Bankr. S.D. Ind. 2007) (student loan debt was a special circumstance because debtor had no alternative but to pay student loans, and conversion to Chapter 13 was of no benefit to debtor or creditors); *and In re Templeton*, 365 B.R. 213 (Bankr. W.D. Okla. 2007) (where debtors had no reasonable alternative but to pay nondischargeable student loans, such loans constituted special circumstances). At one extreme, courts have noted that "funding higher education through the

3

use of student loans is becoming ubiquitous," thereby disqualifying student loans from inclusion in the statute, which by the plain meaning of the word "special" requires something more significant than a commonplace debt.  *In re Vaccariello*, 375 B.R. at 816.  *See also In re Carrillo*, 421 B.R. at 544.  The Trustee argues in favor of this position.  At the other end of the spectrum, courts have held that the nondischargeable nature of student loans under Bankruptcy Code § 523(a)(8) serves as adequate justification for special circumstances treatment.  *See In re Delbecq*, 368 B.R. at 759; *In re Martin*, 371 B.R. 347 (Bankr. C.D. Ill. 2007); *In re Knight*, 370 B.R. 429 (Bankr. N.D. Ga. 2007).  These courts reason that the debtor has "no reasonable alternative" to the continued repayment of student loans because of the hardship that would result from the accumulation of interest if the loans were afforded the same pro rata treatment as all other unsecured debt.  *In re Martin*, 371 B.R. at 356.  However, a troubling extension of this logic would allow nondischargeable debts from fraudulent acts, willful injuries, or drunk driving to qualify for a special circumstances deduction.  *In re Vaccariello*, 375 B.R. at 815.

A middle ground has emerged between these views.  To evaluate a debtor's claim of special circumstances, a few courts have looked at the motivation for the debtor's pursuit of the education tied to the student loan debt.  *In re Pageau*, 383 B.R. 221 (Bankr. D.N.H. 2008); *In re Turner*, 376 B.R. 370 (Bankr. D.N.H. 2007); *Eisen v. Thompson*, 370 B.R. 762 (N.D. Ohio 2007).  In *Pageau*, the court stated that the focus must be on the reasons that the debtor borrowed the money for her education and incurred the student loan debt.  383 B.R. at 228.  The debtor in *Pageau* accumulated student loan liabilities totaling $13,449.16 with a maturity of more than sixty months from the petition date.  Although the debtor incurred the debts in the ordinary course of her education, she argued that the nondischargeable nature of the obligations and her inability to further consolidate the loans justified a special circumstances deduction.  The court disagreed, rejecting the notion that the pursuit of higher education solely for career advancement

4

or increased earning potential could ever constitute special circumstances. Further, the court reasoned that only situations of an involuntary nature, such as "[e]ducational loans incurred in pursuit of education and training . . . necessitated by permanent injury, disability or an employer closing," rise to the level that the statute requires. *Id*.

This Court agrees that the appropriate analysis of a special circumstances claim begins with a fact-specific inquiry into the inception of the expense. In this case, the Debtor's strongest argument is that the Debtor's struggle with her weight required a career change toward a more office-oriented profession. The Debtor undoubtedly seeks to invoke the "severe medical condition" example listed in § 707(b)(2)(B). However, the Debtor's situation does not rise to the level of severity required by the statute. *See In re Pageau,* 383 B.R. at 228. Moreover, a successful special circumstances claim requires adequate documentation and a detailed explanation. 11 U.S.C. § 707(b)(2)(B)(ii); *In re Schley*, 2008 Bankr. LEXIS 2214 (Bankr. E.D. Wis. Aug. 22, 2008) (debtors failed to file any affidavit or declaration supporting their special circumstances claim, relying only on the argument of counsel). Here, although she filed an Affidavit explaining her decision to go back to school, the Debtor has not sought to introduce any details or supporting documents or opinions from a health care provider that the Debtor's weight issues will prevent her from carrying on her career as a nurse.

The Debtor's additional special circumstances claims similarly lack merit. This Court agrees with the *Pageau* court's per se disallowance of special circumstances deductions for student loans incurred for voluntary career enhancement. The commonplace nature of student loans to fund higher education suggests that they are not "special," as they are part of the financial picture of many Americans. Therefore, the Debtor's assertion that she had maximized her earning potential as a nurse fails to advance her argument. The Debtor also argues that her situation was complicated by her relocation from Utah to Wisconsin in order to care for her

5

elderly parents. But the Debtor's parents' health did not cause the Debtor to incur the debts that financed her legal education and is thus not relevant to the special circumstances analysis. Since the Debtor has not demonstrated that the student loans were incurred as a result of a serious medical condition, employer closing, or other similar "special" situation, the Debtor's student loans do not qualify as special circumstances, and may not be deducted as such on her Form B22C.

### B. The Debtor may separately classify the student loans without unfairly discriminating against the other unsecured creditors.

However, the Debtor's inability to deduct her student loan payments as a "special circumstance" on Form B22C does not necessarily defeat the Debtor's goal of exiting Chapter 13 with lower, not higher, student loan obligations. Bankruptcy Code § 1322(b)(5) provides that a debtor may cure defaults and maintain regular payments on any obligation on which the last payment is due after the final plan payment. In this case, the Debtor's student loans have maturity dates well beyond the projected final payment on her sixty-month plan. Therefore, the Debtor may continue the repayment of her student loans without the burden of proving that the debts constitute special circumstances under § 707(b)(2)(B).

By allowing the repayment of long term debts in full, § 1322(b)(5) appears to directly conflict with the antidiscrimination requirement of § 1322(b)(1). That section provides that, while a Chapter 13 plan may separately classify unsecured claims, the plan may not discriminate unfairly against any class. A literal interpretation of both subsections leads to a mathematical impossibility for the vast majority of Chapter 13 debtors who cannot afford to pay unsecured claims in full, because the payment in full of long term debts appears to discriminate against other unsecured creditors who may be paid less than 100%. However, Judge McGarity in *In re Truss* adopted Judge Martin's position that a debtor's maintenance of the full monthly payments

6

on a long-term debt under § 1322(b)(5) supersedes the requirement of equal treatment for all creditors under § 1322(b)(1). 404 B.R. 329, 334 (Bankr. E.D. Wis. 2009) (citing *In re Hanson*, 310 B.R. 131 (Bankr. W.D. Wis. 2004) (Martin, J.)). Moreover, many courts rejecting a special circumstances claim for a student loan noted that in their districts, student loans may be paid in full in a Chapter 13 case. *See, e.g., In re Carrillo*, 421 B.R. at 545 (noting that debtors are permitted to maintain regular student loan payments as part of a Chapter 13 plan); *In re Pageau*, 383 B.R. at 229 ("In this district, student loan debts may be paid directly and separately during a debtor's chapter 13 plan in accordance with § 1322(b)(5) as long as payments are to maintain and keep current long-term student loan debt, i.e., loans that mature after plan completion, with no acceleration of that debt."); *In re Delbecq*, 368 B.R. at 759 ("In this jurisdiction, the Court has historically allowed debtors to classify separately student loan indebtedness pursuant to 11 U.S.C. § 1322(b)(5).").

This Court acknowledges the contrary decision that Judge Shapiro recently issued in *In re Edmonds*, 2010 Bankr. LEXIS 3944 (Bankr. E.D. Wis. Nov. 5, 2010). Perhaps recognizing that not all discrimination, but only "unfair" discrimination is barred by § 1325(b)(1), Judge Shapiro stated: "This court is not of the view that long-term student loans can *never* be separately classified." *Id*. at *9 (emphasis in original). The *Edmonds* debtors had over $130,000 in combined income, and did not establish that they were unable to propose a plan that provided equal treatment of unsecured creditors. *Id.* at *10. Here, the Debtor already has amended her plan once at the Trustee's request to increase payments to unsecured creditors. She lives frugally, and has promised to amend again and propose even higher payments if she is able to secure a higher paying job as an attorney. Even in light of *Edmonds*, this Court concludes that the Debtor's plan does not unfairly discriminate by proposing to maintain payments on her long-term student loans, while proposing to pay her other unsecured creditors less.

7

### III. CONCLUSION

The Debtor has failed to demonstrate that the repayment of her student loan obligations constitutes a special circumstance under § 707(b)(2)(B). Although an involuntary or unexpected event which requires a debtor to pursue new or additional training could qualify for such a deduction, the Debtor has not persuaded the Court that her pursuit of a legal degree was the result of a special circumstance as required by the statute. Further, the Debtor's ability to maintain the full monthly payments associated with her student loans under § 1322(b)(5) shows that the Debtor is not without a "reasonable alternative" to the classification of the student loan debt as a special circumstance.

In her brief, the Debtor argued in the alternative that she should be allowed to separately classify the student loan obligations and maintain her regular payments to the student loan creditors. The Court agrees. Section 1322(b)(5) expressly permits a debtor to cure and maintain payments on a long-term debt; and the Debtor's student loans qualify. In this case, the separate classification does not unfairly discriminate against the class of general unsecured creditors whose claims are not long-term debts.

The Trustee's Objection to Confirmation of the Debtor's Plan is overruled, and the Plan may be confirmed consistent with the terms of this Decision.

Dated: March 11, 2011

By the Court:

*Susan Kelley*

Susan V. Kelley
U.S. Bankruptcy Judge